■ EDWARD A. PUTNAM, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 81123.) EDWARD A. PUTNAM, as Executor of the Estate of ADALINE N. PUTNAM, Deceased, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 81124.) [636 NYS2d 473] —Peters, J. Appeal from a judgment of the Court of Claims (Corbett, Jr., J.), entered September 20, 1994, upon a decision of the court in favor of claimant.

On May 17, 1988, claimant discovered an oil spill on his property which was later traced to a broken underground pipeline located on adjoining property owned by the Department of Transportation (hereinafter DOT). The spill was promptly reported to the Department of Environmental Conservation (hereinafter DEC), which thereafter performed soil and water tests and insured that various remedial measures were taken by DOT.

Claimant initiated these actions to recover damages for injury to his property.[1] Liability for the spill having been acknowledged by the State, a bench trial was held to determine damages. The Court of Claims awarded $12,083.54 in claim No.

---

1. Claimant's mother, or her estate, owned the property at issue for 19 months after the spill occurred. Thereafter, the property was transferred to claimant. Hence, claimant initiated claim No. 2 on behalf of his mother's estate to recover damages for the initial 19 months.

1 and $3,800 in claim No. 2, representing both temporary and consequential damages to the property.[2] Claimant appeals.

It is uncontested that pursuant to Navigation Law § 181 (1) "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages", thus creating what we have found to be a private right of action (*see, Wheeler v National School Bus Serv.*, 193 AD2d 998, 999). Damages sought thereunder are deemed limited by statutory mandate (*see*, Navigation Law § 181 [5]). This mandate includes, *inter alia*, both permanent and temporary damages to the real property. Permanent damages may include "any reduction in value * * * caused by such discharge by comparison with its value prior thereto" (Navigation Law § 181 [2] [a]). Temporary damages may include "[t]he cost of restoring, repairing, or replacing any real * * * property damaged or destroyed by a discharge, [and] any income lost from the time such property is damaged to the time such property is restored, repaired or replaced" (*ibid.*).

Contrary to the determination rendered by the Court of Claims, claimant contends that the damage to the property is permanent. Relying upon the testimony of appraiser Mary Jo Brady, claimant contends that before the spill, the 12.39 commercial acres of the parcel were valued at $10,000 per acre, with the 3.71 residential acres affected by the spill valued at $3,500 per acre. After the spill, claimant contends that these affected acres had no value and are further afflicted with a stigma due to the oil discharge. In further support, Edward Potter, a financial consultant and former vice-president of the commercial loan division of Trustco Bank, testified that the property is no longer mortgageable and, therefore, no longer marketable.

In contrast, in determining the temporary nature of the damage to the property, the Court of Claims relied upon the testimony of both Allan Geisendorfer, Regional Spill Director for DEC, and Kirk Moline, a geologist, who testified that claimant's property was totally remediated. The court further noted that despite uncertainty expressed by claimant's hydrologists without the introduction of supporting proof, several of

2. A bench trial was held before Judge Edwin Margolis, who passed away before rendering judgment. The parties stipulated to the reassignment of the claims for judgment on the record. Unfortunately, Judge Condon A. Lyons, to whom the cases were reassigned, also passed away before rendering judgment. It was upon the further reassignment to Judge Donald J. Corbett, Jr. that the decision and judgment were rendered.

the experts affirmatively testified that all tests performed to date indicate that the bedrock groundwater was not contaminated. Yet, as a precautionary measure, all experts recommended that continued monitoring take place by the use of the monitoring wells situated around the area originally contaminated.[3]

While we would typically give deference to the factual determination rendered by the trial court due to its unique opportunity to observe witnesses and weigh their credibility (see, *Newland v State of New York*, 205 AD2d 1015, 1016), the determination here was not rendered by the Trial Judge. Hence, in our effort to "render a judgment * * * warranted by the record" (*supra*, at 1016), we agree with the Court of Claims that claimant failed to show that the injury to the property was permanent in nature or affected by a stigma.

Brady assessed marketability without ever requesting documents relating to the spill or the testing of the property. She further did not take into account that claimant might be able to successfully use or rent the commercial portion of such property. Notwithstanding remediation and contrary testimony by their own expert, Brady averred that the mere occurrence of the spill stigmatized the property to render it unmarketable. Noting that it was claimant's burden to "proffer[ ] evidence that the market value of property * * * [with the affected condition] has been negatively affected in relation to comparable properties * * * [where no such condition exists]" (*Criscuola v Power Auth.*, 81 NY2d 649, 654), we find, as did the Court of Claims, that claimant failed to proffer sufficient proof to demonstrate that the property was unmarketable.

Thus, rejecting claimant's theory, we find the Court of Claims to have properly determined that there was temporary injury to the subject parcel and that claimant is entitled to be compensated for his loss of use, measured by the decrease in the rental value during the pendency of the injury (see, *Jenkins v Etlinger*, 55 NY2d 35, 40). Assessing the rental value thereof through the testimony and appraisal report of Eugene Cross, who treated the spill as a temporary easement and therefore calculated the rental value both with and without the encroachment, we find that the methodology proffered by Cross was properly utilized by the court. We note, in connection therewith, the complete failure by claimant to offer any alternative approach to assessment.

---

3. All experts acknowledge that as of the time of trial, remediation on the DOT property was not yet complete.

As to claimant's further contention that the Court of Claims should have awarded the prospective costs of a detailed environmental review and the placement of additional monitoring wells, we find no merit. Crediting expert testimony that the remediation of claimant's property was complete and that there was no evidence of contamination to the bedrock groundwater, we note the existence of a well currently located on claimant's property and three monitoring wells on DOT property, two of which are located downgrade from the source of the spill. Since testimony confirmed that samples taken from all of the wells were clean when last tested, we find that the court properly credited those experts who opined that the additional precautions urged by claimant were unnecessary.

Accordingly, we decline to disturb the judgment of the Court of Claims.

Cardona, P. J., Mikoll, Crew III and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.