SUNRISE HARBOR REALTY, LLC, Respondent, v 35th SUNRISE CORP., Appellant, and AMERADA HESS CORPORATION et al., Defendants. (And a Third-Party Action.) [927 NYS2d 145]—

The plaintiff, Sunrise Harbor Realty, LLC (hereinafter the plaintiff), owns certain property on Sunrise Highway in Copiague, which is occupied by an industrial and commercial building. Based upon environmental testing performed by nonparty C.A. Rich Consultants, the plaintiff ascertained that groundwater contamination was migrating from the property of the defendant 35th Sunrise Corp. (hereinafter the appellant) to its property. The plaintiff commenced this action against, among others, the appellant, seeking, inter alia, to recover damages for negligence and based upon strict liability pursuant to Navigation Law article 12 (see Navigation Law § 173 et seq.).

In its bill of particulars, the plaintiff asserted that the damages to the "groundwater and soil underneath the premises" were first noticed in May 2001, but that the date the contamination first occurred was unknown. The plaintiff did not claim that it was deprived of the use of its building.

The evidence adduced at the nonjury trial established that there was contamination of the groundwater under the appellant's property, and that the groundwater flowed to the plaintiff's property. However, evidence also was admitted at trial that contamination could have come from activities on the plaintiff's property, including a leaking heating oil tank, the sale and use of motor oil on the plaintiff's property, and the manufacture and finishing of furniture.

In connection with the issue of damages, the plaintiff relied upon a theory known as vapor contamination, meaning that vapor from the groundwater was contaminating or had the potential to contaminate the plaintiff's soil and building. Based upon vapor contamination, the plaintiff's expert suggested a cleanup plan consisting of an air sparge soil vapor extraction system, to be installed on the plaintiff's property, which required pumping air underground into the water table to disperse the vapors for a period of five years, and a sub slab depressurization system underneath the building on the plaintiff's property, to insure that no vapors invaded the building, which would be operated for a period of 30 years. The cost of such systems would be the sum of $721,827.

The theory of vapor contamination was not alleged in the plaintiff's bill of particulars. The appellant orally moved to strike evidence pertaining to the vapor contamination theory, and the plaintiff orally cross-moved for leave to amend its bill of

particulars to conform with the proof elicited at trial. Although the trial court never explicitly ruled on the motion and cross motion, it impliedly denied the motion and granted the cross motion by awarding the plaintiff cleanup costs in the sum of $721,800 pursuant to Navigation Law article 12. The trial court also awarded the plaintiff environmental consulting fees in the sum of $117,733.99, and an attorney's fee in the sum of $175,000. The plaintiff's remaining causes of action were dismissed.

On appeal, the appellant challenges the determination of liability under Navigation Law article 12 and, in the alternative, argues that the damages awarded thereon were excessive and should be limited to the cleanup costs testified to by the appellant's expert, which amounted to the sum of $172,000. We reverse the judgment insofar as appealed from and remit the matter to the Supreme Court, Suffolk County, for a new trial on the issue of damages on the cause of action to recover damages for violation of Navigation Law article 12.

The trial court erred in failing to strike testimony with respect to vapor contamination on the ground that such theory was not asserted in the plaintiff's bill of particulars. When leave to amend a bill of particulars is sought on the eve of trial, "judicial discretion should be exercised sparingly, and should be discreet, circumspect, prudent, and cautious" (*Navarette v Alexiades*, 50 AD3d 869, 870-871 [2008]). In exercising that discretion, the court must consider whether there was an inordinate delay in seeking leave to amend, without a reasonable excuse, and whether prejudice resulted therefrom (*id.*; *see American Cleaners, Inc. v American Intl. Specialty Lines Ins. Co.*, 68 AD3d 792 [2009]; *Sampson v Contillo*, 55 AD3d 591 [2008]; *Fuentes v City of New York*, 3 AD3d 549, 550 [2004]). Here, the plaintiff acknowledges that it knew of the theory of vapor contamination at least as early as March 2006, or more than two years before the commencement of the trial in May 2008. Nonetheless, without any excuse for failing to do so, it did not move for leave to amend its bill of particulars until trial, when the appellant objected at trial to evidence of vapor contamination.

Further, the trial court never issued an explicit ruling authorizing amendment of the bill of particulars. Where the court weighs relevant considerations, amendment on the eve of trial may be considered a provident exercise of discretion (*see Worthen-Caldwell v Special Touch Home Care Servs., Inc.*, 78 AD3d 822, 823 [2010]), but no such weighing of the relevant considerations occurred here. Further, the amendment in this case dealt with a factual theory which could be factually rebut-

ted, and not a legal theory which could be applied to the same alleged facts (*id.*). Since there was an inordinate delay in moving for leave to amend the bill of particulars, no reasonable justification therefor, and prejudice to the appellant, which did not do its own vapor contamination tests, the testimony with respect to vapor contamination should have been stricken.

However, there was credible and admissible evidence in the record of groundwater contamination of the appellant's property, from a discharge or discharges on that property, at a time which could not be determined. The evidence further established that the groundwater contamination flowed from the appellant's property to the plaintiff's property.

As to the question of liability pursuant to Navigation Law article 12, Navigation Law § 181 (1) provides, in pertinent part: "Any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained, as defined in this section." Navigation Law § 172 (8) defines "discharge" as "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters." A "discharger" includes a landowner who "had the ability to control potential sources of contamination on its property" (*State of New York v Green,* 96 NY2d 403, 407 [2001]). Further, a landowner who purchases the property after a spill occurred may be liable if it did nothing after it learned of the discharge and the need for a cleanup (*see State of New York v Speonk Fuel, Inc.,* 3 NY3d 720, 724 [2004]). If the spill occurred before the landowner acquired the property, it nevertheless is liable based upon its ability to clean up the contamination (*see State of New York v C.J. Burth Servs., Inc.,* 79 AD3d 1298 [2010]).

In the instant case, the evidence established that the appellant was liable as a discharger pursuant to Navigation Law article 12. Navigation Law § 181 (5) allows for a private action to assert a "claim" against a discharger "for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section." A "claim" is defined in Navigation Law § 172 (3), in pertinent part, as "any claim . . . by an injured person, who is not responsible for the discharge, seeking compensation for cleanup and removal costs incurred or damages sustained as a result of a petroleum discharge." It is clear from the record that the plaintiff was not responsible for any discharge on the appellant's property.

As to the question of damages, the plaintiff bore the burden of proof (*see Fusco v State Farm Fire & Cas. Co.*, 57 AD3d 939, 940 [2008]; *AMCO Intl. v Long Is. R.R. Co.*, 302 AD2d 338, 341 [2003]; *Putnam v State of New York*, 223 AD2d 872 [1996]). "The purpose of the statute is, inter alia, to require the prompt cleanup and removal of oil and fuel discharge, to minimize damage to the environment, to restore the environment to its pre-spill condition[,] and to compensate those damaged by such discharge" (*AMCO Intl. v Long Is. R.R. Co.*, 302 AD2d at 340 [internal quotation marks omitted]). "If it is established that despite efforts to clean up property after an oil spill, the premises cannot be restored to their pre-spill condition, 'the proper measure of damages is the total amount of the diminution in value plus the costs of repairs'" (*Turnbull v MTA N.Y. City Tr.*, 28 AD3d 647, 649 [2006], quoting *Melohn v R&M Combustion Co.*, 296 AD2d 323, 324 [2002]). In this case, the trial court found that the plaintiff's premises "apparently were and are operating to this day, as they were in the past," and, thus, no additional damages were awarded for diminution in value or the cost of repairs.

Accordingly, the plaintiff's damages were limited to cleanup costs (*see AMCO Intl. v Long Is. R.R. Co.*, 302 AD2d at 340), and litigation costs, that is, an attorney's fee and environmental consulting fees (*see Starnella v Heat*, 14 AD3d 694, 695 [2005]). In an action to recover damages pursuant to Navigation Law article 12, the plaintiff may recover litigation costs incurred "as a result of the discharge" (*Strand v Neglia*, 232 AD2d 907, 909 [1996]), which could include damages incurred as a result of the defendant's delay or recalcitrance in committing to a cleanup plan (*see AMCO Intl. v Long Is. R.R. Co.*, 302 AD2d at 341).

In light of our determination that the plaintiff's proposed cleanup plan based on a theory of vapor contamination should not have been considered, a new trial on the issue of damages for cleanup costs is warranted. While the appellant argues that those costs should be limited to the sum of $172,000, under the particular circumstances of this case, the plaintiff should be allowed to present evidence as to whether that sum is sufficient. In addition, at the new trial on the issue of damages, the Supreme Court should determine whether the cost of future cleanup should be diminished based on contamination of the groundwater that may have been caused by the plaintiff's own activities. Further, since the award of litigation costs was based upon a judgment awarding damages for vapor contamination, which was erroneous, there must also be a new determination with respect to litigation costs (*see Fuchs & Bergh, Inc. v Lance Enters., Inc.*, 48 AD3d 626, 627-628 [2008]).

The parties' remaining contentions either are without merit or need not be addressed in light of our determination. Dillon, J.P., Belen, Lott and Cohen, JJ., concur. **[Prior Case History: 2009 NY Slip Op 31986(U).]**